IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:09-CV-106-BO

| | | |
|---|---|---|
| LAURA JONES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Defendant's Motion to Dismiss for Lack of

Jurisdiction and Defendant's Motion for a hearing. Both Motions are DENIED.

BACKGROUND

Plaintiff was married to a United States Marine and lived at Camp Lejeune, North

Carolina, from spring 1980 to May 1983. Twenty years later, Plaintiff was diagnosed with Non-

Hodgkin's lymphoma. On October 31, 2005, Plaintiff learned that Camp Lejeune's drinking and

bathing water was likely contaminated with tetrachloroethylene, trichloroethylene,

dicloroethylene, vinyl chloride, and benzene while she lived there, and may have caused her

disease.

Plaintiff filed an administrative complaint with the Department of the Navy on October

31, 2007 and later filed this suit under the Federal Tort Claims Act on July 4, 2009.

The Federal Tort Claims Act (FTCA) waives the United States' sovereign immunity

and thus authorizes jurisdiction for certain torts committed by federal employees while acting

1

within the scope of their employment. 28 U.S.C. § 1346(b)(1). Importantly, the FTCA only allows claims where a private person in like circumstances would be subject to liability according to the substantive law of the state where the act or omission in question occurred. Id.

On February 23, 2010, the Court denied the Defendant's Motion to Dismiss for failure to comply with the statute of limitations under 28 U.S.C. § 2401(b). The Defendant now claims the Plaintiff's claim is barred by North Carolina's General Statute § 1-52(16)'s 10 year statute of repose. It is undisputed that a state's statute of repose is considered substantive law, and would apply in an action under the FTCA.

## DISCUSSION

This case concerns a matter of first impression that has profound importance to all tort claims involving the manifestation of latent diseases in North Carolina. The Defendant claims that § 1-52(16)'s bars all tort actions filed more than 10 years after a defendant's alleged culpable conduct, even if the harm to the plaintiff did not manifest until after the 10 years had passed. The Court disagrees.

The Court finds that § 1-52(16)'s statue of repose has an exception for latent diseases. The Court bases this decision on the statute's legislative history, case law, and state public policy. In addition, the Court finds this interpretation is necessary to avoid the finding that the statute violates the North Carolina Constitution's guarantee of open courts.

Thus, the Plaintiff's claim is not barred by the statute of repose, and the Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is denied.

### Statutory Interpretation of § 1-52(16)

The legislative history of § 1-52(16) shows there is a latent disease exception to its statute of repose. Section 1-52(16) states,

2

Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1-15(c), shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

Local courts have consistently held that North Carolina's statute of reposes do not apply to latent diseases. This was first held in Wilder v. Amatex Corp, where the North Carolina Supreme Court interpreted § 1-15(b). 314 N.C. 550 (1985). Section 1-15(b) stated,

Except where otherwise provided by statute, a cause of action, other than one for wrongful death or one for malpractice arising out of the performance or failure to perform professional services, having as an essential element bodily injury to the person or a defect in or damage to property which originated under circumstances making the injury, defect or damage not readily apparent to the claimant at the time of its origin, is deemed to have accrued at the time the injury was discovered by the claimant, or ought reasonably to have been discovered by him, whichever event first occurs; provided that in such cases the period shall not exceed ten years from the last act of the defendant giving rise to the claim for relief.

N.C. GEN .STAT. § 1-15(b) (repealed in 1979).

Section 1-15(b) was enacted in 1971, and included North Carolina's first statute of repose. This statute was in response to a line of cases that had established that the statute of limitations begins to run when an injury is first inflicted, notwithstanding that the injured claimant might then be justifiably unaware of the injury. Wilder, 315 N.C. at 555 (citing Raftery v. Construction Co., 291 N.C. 180 (1976)). In one case, for example, the Supreme Court held that the plaintiff's claim began to run at the point when doctors left a sponge in his body, despite that the plaintiff did not discover the injury until years later. Shearin v. Lloyd, 246 N.C. 363 (1957). The North Carolina Legislature eliminated this line of cases by implementing a "discovery rule" that started the statute of limitations running for latent injuries after the plaintiff should have discovered the injury. The legislature also included a 10 year statute of repose as a

3

compromise to effected defendants. Wilder 315 N.C. at 556. In Wilder, however, the Supreme

Court held that the § 1-15(b) only applied to latent injuries and not latent diseases. Wilder's

holding was based on three considerations: the statute's legislative history, text, and public

policy.

Wilder first pointed out that the statute's text could not possibly encompass latent

diseases. This was because the North Carolina Legislature historically viewed the "injury" in

latent diseases cases to occur not at the time of the Defendant's conduct, but at the time of

diagnosis or manifestation; only at this point did the legally relevant time period began to run.[1]

Id. at 561. Accordingly, § 1-15(b)'s reference to the "origin of the latent injury" could not

possibly refer to latent diseases, as a diagnosed disease could not possibly be "latent." In the

words of Wilder,

> ...the legislature and the Court have recognized that exposure to disease-causing agent is
> not itself an injury. The body is daily bombarded by offending agents. Fortunately, it
> almost always is capable of defending itself against them and remains healthy until, in a
> few cases, the immune system fails and disease occurs. That, in the context of disease
> claims, constitutes the first injury. Although persons may have latent diseases of which
> they are unaware, it is not possible to say precisely when the disease first occurred in the
> body. The only possible point in time from which to measure the "first injury" in the
> context of a disease claim is when the disease is diagnosed. When the disease is
> diagnosed, it is no longer latent.

Accordingly, there was "no need" in 1971 for the legislature to pass a statute treating diseases as

latent injury claims for the purpose of determining when legally material time periods begin to

---

[1] In Blassingame v. Southern Asbestos Co., the North Carolina Workmen's Compensation Act required written
notice of "the first distinct manifestation of an occupational disease . . . within thirty (30) days after such
manifestation, and, in the case of death, . . . within ninety (90) days after occurrence." 217 N.C. 223(1940). In
addition, a claimant was required to bring a claim for disability or death within one year after disablement or death,
or else the claim would be barred. The North Carolina Supreme Court found that the claim was filed within the
applicable ninety-day period when it was filed within 90 days of the asbestos-related diagnosis in the autopsy report,
even though the claim was filed more than ninety days after death. The court stated: "Thus it will be seen that it was
humanly impossible for the widow to have given notice of such death (death resulting from asbestosis) within ninety
days after the death. To construe this section as contended by the defendants would be to deny the benefits conferred
by the act in this and all similar cases." See also Duncan v. Carpenter & Phillips, 233 N.C. 422 (1951).

run, as the relevant rule was already well established. Id. Hence, latent diseases would not fall under the newly passed § 1-15(b). Instead, they would remain under the generic personal injury statute § 1-52(16), which at the time contained no statute of repose and allowed a plaintiff with a latent disease to bring a claim within three years after the plaintiff should have reasonably discovered it. Id.

Wilder bolstered its conclusion with the "deliberate omission" of the word "disease" in § 1-15(b). This omission was especially significant as earlier versions of the proposed statute had in fact included the word disease; thus its removal signified that the legislature no longer wished the bill to cover diseases. Id. at 562.

Finally, the Wilder holding rested on pure public policy: "It is inconceivable that the legislature enacted G.S. 1-15(b) in 1971 intending that claims for injuries caused by disease accrue before the disease is diagnosed." Id. at 561.

The statute at issue in Wilder, § 1-15(b), was repealed in 1979.[2] At that time the legislature also moved §1-15(b)'s 10-year repose clause and engrafted it onto § 1-52(16). In addition, the legislature also added a six year statute of repose to § 1-50(6), the statute of limitations for product liability. The legislative history concerning these amendments exclusively dealt with product liability cases, and made no reference to the repeal of § 1-50(b), or to the addition of the statute of repose to § 1-52(16). Nor did the history reveal how either new statute of repose would affect diseases. Indeed, the court finds the legislature's acts to be ambiguous. One could interpret the amendment of § 1-52(16) as applying the 10-year statute of repose to all bodily harm, including latent diseases. Or one could view the repose clause as carrying over the disease exception from § 1-15(b). If the latter were true, the disease exception would have to be found

---

[2] Although Wilder was decided after § 1-15(b) was repealed, the plaintiff's claim in that case had accrued while the statute was still in effect. Accordingly, one could not argue that the North Carolina Legislature repealed the statute in response to the Wilder decision.

exclusively in the statute of repose, as it is undisputed that the rest of § 1-52(16), including its

three-year statute of limitations, applies to latent diseases. See, Dunn v. Pac. Employers Ins. Co.,

332 N.C. 129 (1992).

The Fourth Circuit adopted the latter view. In Hyer v. Pittsburgh Corning Corp, the Court

interpreted § 1-50(6)'s statute of repose, which was added at the same time as § 1-52(16)'s. 790

F.2d 30 (4th Cir.1986).  Section1-50(6) states:

> No action for the recovery of damages for personal injury, death or damage to
> property based upon or arising out of any alleged defect or any failure in relation to a
> product shall be brought more than six years after the date of initial purchase for use
> or consumption.

Hyer held that § 1-50(6)'s repose clause does indeed have a disease exception. The Court stated

that Wilder "makes it plain…that the State Supreme Court does not consider disease to be

included within a statute of repose directed at personal injury claims unless the Legislature

expressly expands the language to include it." 790 F.2d 30 (4th Cir.1986). Hyer's expansive

view of Wilder was reiterated twice more by the Fourth Circuit in Bullard v. Dalkon Shield

Claimants Trust, 74 F.3d 531 (4th Cir. 1996) and Doe v. Doe, 973 F.2d 237, 239 (4th Cir. 1992).

The Defendant argues that Hyer and its progeny were wrongly decided. Significantly,

however, although Hyer was decided over 25 years ago and implicates every statute of repose

directed at personal injuries in North Carolina, the legislature has not amended 1-50(6), § 1-

52(16) or any other repose clause to include diseases. This omission is even more significant as

the North Carolina Legislature has amended § 1-50 five times and § 1-52(16) eight times since

Hyer, both statutes being barely a page. In construing statutes, it is presumed that the legislature

acted with care, deliberation, and full knowledge of prior and existing law. State v. Benton, 276

N.C. 641, 658 (1970). As the North Carolina Legislature has had ample opportunity to amend

these statutes, and has chosen not to, one could only assume that the legislature has found <u>Hyer</u>, <u>Bullard</u>, and <u>Doe</u> to accurately reflect its intent. Thus, to overturn these cases, the Court would have to oppose not only deeply-rooted decisions of the Fourth Circuit, but also the will of the North Carolina Legislature.

Furthermore, it is difficult to imagine that the legislature intended its amendment to § 1-52(16) to reverse over 30 years of North Carolina precedent recognizing latent disease exceptions to time sensitive statutes.[3] Such a dramatic departure would certainly warrant some comment in the legislative history. However, no such comment exists. <u>See</u> <u>Wilder</u>, 314 N.C. at 561 (placing importance on the "deliberate omission of reference to disease as this statute made its way through the legislative process.")

Finally, the Court cannot fathom a law that would require hundreds of thousands of plaintiffs to bring their claims before they even had opportunity to know they were harmed. Such an effect would have been just as "inconceivable" in 1979 as it was in 1971. <u>Wilder</u>, 314 N.C. at 561 ("It is inconceivable that the legislature enacted G.S. 1-15(b) in 1971 intending that claims for injuries caused by disease accrue before the disease is diagnosed.") Just in the facts of this case alone, the Senate Veterans Affairs Committee believes over 500,000 marines and their families were exposed to toxic substances in Camp Lejeune's water between the 1950's and 1987.[4] Yet cancer and other toxin induced diseases often do not manifest for 10-15 years after exposure. <u>See</u> <u>Infra</u> p. 9. To summarily bar such claims from entering the court house would be a profound miscarriage of justice. <u>Id.</u>

---

[3] The earliest case that <u>Wilder</u> cites is <u>Blassingame v. Asbestos Co.</u>, 217 N.C. 223 (1940), which found a latent disease exception to a notice requirement for worker's compensation.

[4] Robert O'Dowd, <u>Camp Lejeune Brain Cancer Cases, Lawsuit Filed in District Court</u>, VETERAN'S TODAY, August 2, 2010, http://www.veteranstoday.com/2010/08/02/camp-lejeune-brain-cancer-cases-lawsuit-filed-in-district-court/.

Thus, in accordance with the legislative history, case law, and North Carolina public policy, the Court finds that the North Carolina Legislative did not intend the statute of repose clause in § 1-52(16) to refer to latent diseases. Instead, latent diseases are only governed by the statute of limitations in § 1-52(16), giving plaintiffs three years to file from when they should have reasonably have discovered the existence and cause of their illnesses.[5]

Constitutionality of § 1-52(16)

To interpret § 1-52(16)'s statute of repose as applying to latent diseases would likely render the statute unconstitutional under the North Carolina's Constitution's art. I, § 18, known as the "open courts" provision.

The United States Supreme Court has long held that a "statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." Moore Ice Cream Co. v. Rose, 289 U.S. 373, 379 (1933).

Article I, § 18 of the North Carolina Constitution provides that "every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay." The North Carolina Supreme Court interprets this provision as only applying to "vested rights:" In cases involving latent harm, a plaintiff's cause of action would not yet have accrued at the time the statute of repose passed; thus a vested right is not affected. As a result, the Supreme Court has held that this provision is generally not implicated by statutes of repose that cut off latent claims before they manifest. Lamb v. Wedgewood South Corp, 308 N.C. 419, 440 (1983).

Yet the North Carolina Supreme Court has stated that a statute of repose may still be unconstitutional under the open court provision if it "had a time period so short that it would

---

[5] As this case involves a claim under the FTCA, the relevant statute of limitations is in 28 U.S.C. § 2401(b), which gives plaintiffs two years to file from the accrual of their claim. The Court has already resolved in a previous order issued on February 24, 2010 that this case meets this statute of limitations.

effectively abolish all potential claims." Lamb v. Wedgewood South Corp., 308 N.C. 419, 444 n. 7 (1983). In Lamb, the plaintiff sued an architect after falling through a glass window. The court held that a statute of repose barring claims against architects and builders arising out of defects in property after six years was constitutional. Lamb refrained from deciding however, "whether the legislature could constitutionally abolish all tort claims against builders and designers arising out of improvements they built or designed." Id. at 443-444. In that case, the court found this was not an issue as "93% of all claims against architects are brought within six years of the substantial completion of the construction." Id. at 444 n. 7. Similarly, Tetterton v. Long Mfg. Co., Inc., found §1-50(6)'s statute of repose constitutional in part because "over 97 percent of product-related accidents occur within six years of the time the product was purchased." 314 N.C. 44, 54 (1985).

Here, the plaintiff is claiming she contracted non-Hodgkin's lymphoma from toxic chemicals in the drinking and bathing water of Camp Lejeune. According to the Centers for Disease Control and Prevention, "the time between first exposure to a cancer-causing agent and clinical recognition of the disease is called the latency period. Latency periods vary by cancer type, but usually are 15 to 20 years, or longer."[6] Indeed, according to Dr. Michael L. Gross's testimony at a Congressional hearing regarding Camp Lejuene's allegedly contaminated water, cancer in the affected marines and their families would not manifest for "10-15 years."[7]

Moreover, many cancers like non-Hodgkin's lymphoma provide no indication of their cause. Here, those exposed to the water at Camp Lejuene could not have connected their illnesses to the alleged contamination until studies and investigations began revealing such

---

[6] Centers for Disease Control and Prevention, Workplace Safety and Health Topics, Occupational Cancer (June 21, 2010) http://www.cdc.gov/niosh/topics/cancer/.
[7] Poisoned Patriots: Contaminated Drinking Water at Camp Lejeune: Hearing before the H. Comm. on Energy and Commerce, 110th Cong. 12, 15 (2007) (statement of Michael L. Gross, Md.).

causation in 2007. Thus, to apply the statute of repose in this case would bar all potential claims from the over 500,000 marines and their families affected. Indeed, it would bar the overwhelming majority of claims involving any cancer.

Several states have already found similar statutes of repose unconstitutional under their state right to open courts when they are used to bar suits before a plaintiff could have discovered their illness or injury. These states include Arizona, Ohio, Indiana, Utah, Rhode Island, Florida, New Hampshire, as well as Alabama, whose open courts provision is virtually identical to North Carolina's.[8] See, e.g., Halbe v. Weinberg, 717 N.E.2d 876 (Ind. 1999)(holding two-year medical malpractice statute of limitations unconstitutional as applied to plaintiffs who are unable to discover their claims within two years); Brennaman v. R.M.I. Co., 70 Ohio St. 3d 460, 1994-Ohio-322, 639 N.E.2d 425 (1994) (holding 10 year statute of repose violated state constitutional right to remedy in personal injury and wrongful death suits); Hazine v. Montgomery Elevator Co., 176 Ariz. 340, 861 P.2d 625, 30 A.L.R.5th 729 (1993) (holding that statute barring products liability actions for injuries occurring more than 12 years after product is first sold violated state constitutional prohibition against abrogation of right of action to recover damages for injuries); Berry By and Through Berry v. Beech Aircraft Corp., 717 P.2d 670 (Utah 1985)(holding statute barring all product liability suits if action is filed more than six years after date of first sale for use or consumption or ten years after date of manufacture unconstitutional as violating open courts provision); Kennedy v. Cumberland Eng'g Co., 471 A.2d 195, 200 (R.I. 1984)(holding 10-year statute of repose violates state constitution's guarantee of open courts in case involving defective machine); Heath v. Sears, Roebuck & Co., 123 N.H. 512, 525 (1983)(holding 12-year period of repose and three-year period of limitations contained in statute operated to eliminate a

---

[8] "That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay." Ala. Const. art. 1, § 13.

cause of action before wrong could reasonably be discovered were unconstitutional in consolidated product liability actions); Lankford v. Sullivan, Long & Hagerty, 416 So. 2d 996 (Ala. 1982) (holding 10-year statute of repose violated state constitutional guarantee of access to courts after plaintiff was injured when 'manlift' elevator collapsed and fell); Diamond v. E. R. Squibb & Sons, 397 So. 2d 671 (Fla. 1981) (holding 12-year statute of limitations violated state guarantee of open courts when it would have barred right of actions against manufacturer of drug before they ever existed, as it was not discovered until 20 years after drug was administered that the drug caused cancer); Battilla v. Allis Chalmers Mfg. Co., 392 So. 2d 874 (Fla. 1980) (holding that statute barring plaintiffs' suit against manufacturer brought more than 12 years after date of sale as applied unconstitutionally denied plaintiffs access to courts); Also see, Leslie Calkins O'Toole, Wilder v. Amatex Corp.: A First Step Toward Ameliorating the Effect of Statues of Repose on Plaintiffs with Delayed Manifestation Diseases, 64 N.C.L.R. 416 (1986).

Accordingly, § 1-52(16)'s statute of repose is likely unconstitutional as applied to cancer under the North Carolina's Constitutional right to open courts. Thus, interpreting § 1-52(16)'s statute of repose to exclude latent diseases saves the statute from "grave doubts" regarding its constitutionality.

CONCLUSION

The Court finds that the North Carolina Legislative did not intend the 10 year statute of repose in § 1-52(16) to refer to latent diseases. Thus the statute of repose cannot bar Plaintiff's claim involving Non-Hodgkin's lymphoma, a latent disease that only manifested in November 2003. Accordingly, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is DENIED. Defendant's Motion for a Hearing is also DENIED.

12

SO ORDERED, this ___9___ day of November, 2010.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE