IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:09-CV-106

| | |
|---|---|
| LAURA JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    O R D E R |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

This matter is before the Court on Defendant's Motion for Reconsideration (D.E. # 51) and Plaintiff's Motion for Leave to File *Instanter* its Response in Opposition (D.E. #54). Plaintiff also requests (D.E. # 54-A) that the Court Clerk forward this Court's November 10, 2010 Order to the North Carolina Attorney General. (D.E. # 49).

Defendant's Motion for Reconsideration is DENIED. Plaintiff's Motions are both GRANTED.

## I.    BACKGROUND

Plaintiff was married to a United States Marine and lived at Camp Lejeune, North Carolina, from spring 1980 to May 1983. Twenty years later, Plaintiff was diagnosed with Non-Hodgkin's lymphoma. On October 31, 2005, Plaintiff learned that Camp Lejeune's drinking and bathing water was likely contaminated with tetrachloroethylene, trichloroethylene, dicloroethylene, vinyl chloride, and benzene while she lived there, and may have caused her disease. Plaintiff is one of over a million people estimated to have been allegedly exposed to this

1

toxic water over a 30-year period. The issue has reached national news for the last few years, and led to congressional hearings last fall.[1]

Plaintiff filed an administrative complaint with the Department of the Navy on October 31, 2007 and later filed this suit under the Federal Tort Claims Act on July 4, 2009. On February 23, 2010, the Court denied the Defendant's Motion to Dismiss for failure to comply with the statute of limitations under 28 U.S.C. § 2401(b).

The Defendant filed another Motion to Dismiss on August 4th, arguing the Plaintiff's claim is barred by North Carolina's General Statute § 1-52(16)'s 10 year statute of repose. (D.E. # 41). The Court denied that Motion in an 11-page order filed November 10, 2010, finding the statute of repose contained an exception for latent diseases, such as Plaintiff's Non-Hodgkin's lymphoma. The Defendant now motions for reconsideration.

## II.   DISCUSSION

The Court first grants Plaintiffs Motion for Leave to File a Response. The Court then denies the Defendant's Motion for Reconsideration.

### A.  Motion for Leave to File

After considering Plaintiff's arguments and the Defendant's lack of opposition to her Motion, the Court grants Plaintiff's Motion for Leave to File *Instanter* its Response in Opposition to Defendant's Motion for Reconsideration (D.E. # 54). As Plaintiff's Response did not raise any new issues, a Reply is unnecessary. Local Civil Rule 7.1(f)(1).

### B.  Motion for Reconsideration

The Court denies the Defendant's Motion for Reconsideration.

---

[1] See, e.g., Barbara Barrett, House Hearing to Probe Camp Lejeune Water Contamination, MIAMI HERALD, Sept. 13, 2010, http://www.miamiherald.com/2010/09/13/1822997/congress-to-probe-camp-lejeune.html#

Defendant argues this Court should reconsider its Order for two reasons: First, Defendant claims the Court failed to properly interpret § 1-52(16). Second, the Defendant argues that this Court should not have questioned whether Defendant's proposed interpretation of the statute was constitutional, at least without notifying the North Carolina Attorney General.

Both arguments are unpersuasive. The Court's analysis was firmly rooted in North Carolina Supreme Court and Fourth Circuit Precedent. Additionally, the Court followed proper methods of statutory interpretation. Finally, the Court appropriately questioned whether Defendant's proposed interpretation of the statute was constitutional; notifying the North Carolina Attorney General was unnecessary, or alternatively, a harmless omission.

a. The Court's § 1-52(16) analysis was firmly rooted in precedent.

As explained in this Court's order, the North Carolina Supreme Court and Fourth Circuit have held that latent diseases should not be included in statutes of reposes, unless the North Carolina Legislature expressly expands language to include it. See Wilder, 314 N.C. at 550 (1985), Hyer v. Pittsburgh Corning Corp. 790 F.2d 30 (4th Cir.1986), Bullard v. Dalkon Shield Claimants Trust, 74 F.3d 531 (4th Cir. 1996); Doe v. Doe, 973 F.2d 237, 239 (4th Cir. 1992); Order at 2-8. Accordingly, the Court found that § 1-52(16)'s 10 year statute of repose has a latent disease exception.

The Defendant's attempts to address these precedents have been unsuccessful. In its Motion to Dismiss, the Defendant mischaracterized the Wilder holding. [2] Def.'s Mot. Dismiss

---

[2] The Defendant's Motion to Dismiss stated: "[m]ost importantly for purposes of this case, however, the *Wilder* court specifically mentioned the significant change in the law that section 1-52(16) represented: 'We note, importantly, that G.S. 1-15(b) is not intended to be a statute of limitations governing all negligence claims, *such as the statute of limitations contained in the first clause of G.S. 1-52(16).*' *Wilder*, 336 S.E.2d at 69 (emphasis added)."

In other words, the Defendant tried to argue that Wilder held that § 1-52(16)'s statute of repose did not contain a latent disease exception. The Defendant ignored the important fact that Wilder was discussing § 1-52(16) as it appeared at the time of the Plaintiff's injury, which was before the legislature amended § 1-52(16) to include a statute of repose in 1979. Although the Wilder dissent argues in the last line of its opinion that § 1-52(16)'s statute

3

Mem. 13-14. The Defendant also relegated the Fourth Circuit precedents to a footnote, which briefly stated that these precedents were unpersuasive, inapplicable, and non-binding federal authority. Id. at 14 n. 7. The Defendant repeats these claims in its Motion for Reconsideration. Def.'s Mot. Recons. 6-7. The Court has already rejected these arguments in its Order. Order at 2-8.

      b.  The Court's § 1-52(16) analysis followed proper rules of statutory construction

Adopting § 1-52(16)'s literal meaning would lead to absurd results. The Court accordingly used traditional rules of statutory construction to determine legislative intent.

Section 1-52(16) states,

> Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1-15(c), shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

Federal courts should adopt state rules of statutory construction when interpreting state statutes. See, e.g., United States v. Tibbetts, 396 F.3d 1132, 1140 (10th Cir. 2005); In re Reaves, 285 F.3d 1152, 1156 (9th Cir. 2002).

The North Carolina Supreme Court has long accepted the traditional "canon against absurdities," which requires courts to bypass the plain meaning of a statute if it would lead to an absurd result. See, e.g., State v. Beck, 359 N.C. 611, 613 (2005)("Where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded")(citations omitted). Also see, e.g., Commissioner v. Brown, 380 U.S. 563, 571(1965) ("Unquestionably the courts, in interpreting a statute, have some scope

---

of repose contains no disease exception, this issue was never addressed by the majority. Id. at 75 (Meyer, J., dissenting).

for adopting a restricted rather than a literal or usual meaning of its words where acceptance of

that meaning would lead to absurd results or would thwart the obvious purpose of the

statute.")(Internal citations and quotations omitted).

Once necessary to look past a statute's text, the rules of statutory interpretation are clear.

The North Carolina Supreme Court has continuously stated that "The cardinal principle of

statutory construction is to discern the intent of the legislature." State v. Jones, 359 N.C. 832,

616 S.E.2d 496 (2005). Indicators of legislative intent include:

> [T]he purposes appearing from the statute taken as a whole, the phraseology, the words
> ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied,
> the remedy, the end to be accomplished, statutes *in pari materia,* the preamble, the title, and
> other like means. The intent of the General Assembly may also be gleaned from legislative
> history. Likewise, later statutory amendments provide useful evidence of the legislative
> intent guiding the prior version of the statute. Statutory provisions must be read in context:
> Parts of the same statute dealing with the same subject matter must be considered and
> interpreted as a whole. Statutes dealing with the same subject matter must be construed *in
> pari materia,* as together constituting one law, and harmonized to give effect to each.

Insulation Systems, Inc. v. Fisher, 678 S.E.2d 357, 360 (N.C.App.,2009)(quoting In re Proposed

Assessments v. Jefferson-Pilot Life Ins. Co., 161 N.C.App. 558, 560(2003)). Additionally,

considerations of stare decisis "weigh heavily" in statutory construction, where the legislature is

free to change a court's interpretation of its legislation. See, e.g., Pearson v. Callahan, 129 S. Ct.

808 (2009).

Interpreting § 1-52(16) to apply to latent diseases would lead to absurd consequences.

See Order at 7-8 ("The Court cannot fathom a law that would require hundreds of thousands of

plaintiffs to bring their claims before they even had opportunity to know they were harmed.") As

stated in Wilder regarding an almost identical statute of repose, "[i]t is inconceivable that the

legislature enacted G.S. 1-15(b) in 1971 intending that claims for injuries caused by disease

accrue before the disease is diagnosed." Wilder, 314 N.C. at 561. It is just as inconceivable that the legislature intended this purpose for § 1-52(16) in 1979. Order at 7-8.

This Court thus properly bypassed § 1-52(16)'s literal meaning to determine legislative intent through the statute's legislative history and purpose, interpretations of similar statutes, and public policy. Order at 2-8.

Additionally, the Court found that the Defendant's reading of § 1-52(16)'s would likely render the statute unconstitutional under the North Carolina's Constitution's art. I, § 18, known as the "open courts" provision. Order at 8.

c.  The Court Properly Questioned the Constitutionality of the Defendant's § 1-52(16) Interpretation

The Defendant primarily complains about two aspects of this Court's constitutional analysis. First, Defendant argues the Court erred by sua sponte addressing whether the Defendant's reading of § 1-52(16) was constitutional. Second, the Defendant argues the Court erred by failing to notify the North Carolina Attorney General of this constitutional inquiry under 28 U.S.C. § 2403(b) and Federal Rule of Civil Procedure 5.1.

Notably, the Defendant does not challenge the merits of the Court's actual constitutional analysis.[3] Indeed, the Defendant's arguments are again unpersuasive.

_____

[3] The Defendant's only critique of this Court's constitutional analysis is in footnote 1: "Notably, the only North Carolina cases cited by the Court in its Order concluded that the statutes of repose were constitutional under North Carolina's open courts provision. *Tetterton v. Long Mfg. Co., Inc.*, 314 N.C. 44 (1985); *Lamb v. Wedgewood S. Corp.*, 302 S.E.2d 868 (1983)."

The Defendant conveniently leaves out the fact that the North Carolina Supreme Court's holdings in those cases were entirely based on the premise that the respective statute of reposes would prohibit less than 7 percent and 3 percent of the claims similar to those of the respective plaintiffs. To the contrary, this Court found the instant statute of repose would bar almost all claims regarding Camp Lejeune's allegedly toxic water because of cancer's commonly prolonged latency period. Order at 9-10.

*i.Sua sponte*

The Defendant argues that the Court should not have addressed the constitutionality of Defendant's § 1-52(16) interpretation sua sponte. The Court first notes that the Plaintiff's Response to Defendant's Motion to Dismiss did reference the "potential Constitutional problems that would be inherent with the inclusion of diseases in the repose clauses." Pl.'s Resp. 5. The Defendants chose not to address this issue in their Reply. (D.E. # 46).

Further, the Court has been unable to find any case law suggesting that a district court abuses its discretion by addressing a constitutional issue sua sponte, and the Defendant has presented none. To the contrary, the Fourth Circuit has established its own power to consider such issues sua sponte. See, e.g., U.S. v. Heater, 63 F.3d 311, 331 fn 5 (4th Cir. 1995) (holding it within the Court's discretion to address Ex Post Facto issue sua sponte.) Indeed, a court of appeals reviewing an issue sua sponte is inherently more problematic than a district court, as court of appeals' opinions are rarely successfully appealed. Here, the Defendant is free to raise its arguments challenging the Court's analysis in the Fourth Circuit.

Thus the Court did not err by addressing the constitutional issue sua sponte.

*ii.28 U.S.C. § 2403(b)*

The Court made no reversible error by failing to notify the North Carolina Attorney General regarding this case under 28 U.S.C. § 2403(b). Section 2403(b) states:

> (b) In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

In other words, § 2403(b) provides North Carolina with the right to intervene in any case questioning the constitutionality of a North Carolina statute. If a party fails to notify the State of the constitutional challenge,[4] a court must do so instead.

This Court is not convinced that this case triggers 28 U.S.C. § 2403(b). The Court only questioned the constitutionality of the Defendant's *reading* of 1-52(16), not the constitutionality of the statute itself. Order at 8. The Court also doubts that the Defendant has standing to raise North Carolina's right to intervene under § 2403(b).

Assuming however that this matter is sufficient to trigger 28 U.S.C. § 2403(b) and that the Defendant does have standing, the Defendant's arguments are still unconvincing. Failure to notify the state is not reversible error, and in no way deprived the Court of jurisdiction over this matter. While the Fourth Circuit has never addressed this issue, several other courts have:

Failure to certify does not deprive a district court of jurisdiction See e.g., Bottineau Farmers Elevator v. Woodward-Clyde Consultants, 963 F.2d 1064, 1075 n. 10 (8th Cir. 1992); Tonya K. by Diane K. v. Board of Education, 847 F.2d 1243 (7th Cir.1988); Merrill v. Town of Addison, 763 F.2d 80, 82 (2d Cir. 1985); Kealey Pharmacy & Home Care Services, Inc. v. Walgreen Co., 761 F.2d 345 (7th Cir. 1985); Thatcher v. Tennessee Gas Transmission, 180 F.2d 644 (5th Cir.1950). Indeed, § 2403(b) does not specify when certification must be made. Several courts have held that failure to certify may be corrected by notifying the attorney general *after* a district court's order addresses constitutionality, allowing the attorney general to intervene on appeal. Oklahoma ex rel Edmondson v. Pope, 516 F.3d 1214, 1216 (10th Cir. 2008). See also, Doyle v. Suffolk County, 786 F.2d 523, 526 (2d Cir.1986) (finding it sufficient to allow the attorney general to intervene while the appeal was pending); Merrill v. Town of Addison, 763

---

[4] See also Federal Rule of Civil Procedure 5.1, which requires a party challenging the constitutionality of a state statute to notify the state attorney general.

F.2d 80, 83 (2d Cir.1985) (finding it sufficient that attorney general was notified after Seventh Circuit oral arguments); Tonya K. by Diane K. v. Board of Educ. of City of Chicago, 847 F.2d 1243, 1247 (7th Cir. 1988) (finding that notice to attorney general after the district court's decision gave sufficient time to exercise right to intervene.) " See, also, Bridges v. Phillips Petroleum Co., 733 F.2d 1153, 1156 n. 7 (5th Cir.1984)("Certification is permissible at any stage of the proceeding.") Certification is adequate even at the late stage of Supreme Court proceedings. See, e.g., Glidden Co. v. Zdanok, 368 U.S. 814 (1961) (Supreme Court certified question); Sct. Rule 29(4)(c)(Supreme Court rule allowing certification).

The Defendant has only cited one case for its proposition that a Court should rehear a matter because the attorney general was not notified: In Fordyce v. City of Seattle, the Ninth Circuit found a district court abused its discretion by issuing a declaratory judgment invalidating a state statute on constitutional grounds without first notifying the state. 55 F.3d 436 (9th Cir. 1995). Here, however, this Court has not invalidated any statute.

Providing notice to the North Carolina Attorney General at this stage of the proceedings should adequately soothe Defendant's concerns. If North Carolina wishes to be involved, it will have sufficient time to intervene by filing a brief with the Fourth Circuit. Plaintiff's Request to notify the Attorney General is granted. (D.E. # 54-A).

III.   CONCLUSION

The Court GRANTS the Plaintiff Leave to File and DENIES the Defendant's Motion for Reconsideration. The Court also ORDERS the Clerk of the Court to send a copy of the Court's Order, dated November 10, 2010 (D.E. # 49) to the North Carolina Attorney General.

SO ORDERED, this ___ day of February, 2011.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE